IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:09-CT-3024-D

| | | |
|---|---|---|
| DOUGLAS WADE MELTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| SUPERINTENDENT SANDRA THOMAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On February 4, 2009, Douglas Wade Melton ("Melton" or "plaintiff"), a former state inmate,[1] filed this action for injunctive and monetary relief under 42 U.S.C. § 1983. Compl. [D.E. 1]. Melton alleged that 27 defendants violated his constitutional rights during his incarceration at Lumberton Correctional Institution ("LCI") and other correctional institutions. See Compl. On July 20, 2009, the court reviewed the complaint and ordered Melton to particularize his claims [D.E. 7]. On July 29, 2009, Melton filed an amended complaint in response to the court's order. Am. Compl. [D.E. 8]. On August 17, 2010, the court reviewed Melton's amended complaint, dismissed as moot plaintiff's request for injunctive relief, and dismissed without prejudice plaintiff's state-law negligence claim for medical malpractice [D.E. 10]. However, the court allowed Melton's section 1983 claims to proceed. Id. The remaining defendants are Sandra Thomas, the Superintendent at Lumberton Correctional Institution ("LCI"); Don Hunt, LCI Assistant Superintendent; Cornelius Jones, a nurse at LCI; Jarvis McNeill, a correctional officer at LCI; and

---

[1] The North Carolina Department of Correction ("DOC") released Melton from custody in 2010. See N.C. Dep't Corr. Offender Pub. Info., http://webapps6.doc.state.nc.us/opi/viewoffender .do?method=view&offenderID=0278532 (last visited Jan. 18, 2012); see also [D.E. 9, 24, 34, 38, 48–49] (notices of change of address).

Dr. Ron Bell, a physician at LCI.

On November 5, 2010, defendants Hunt, Jones, McNeill, and Thomas answered the complaint [D.E. 23]. On November 15, 2010, defendant Bell answered the complaint [D.E. 27] and filed a motion to dismiss [D.E. 25]. On May 6, 2011, the court granted Bell's motion to dismiss, and dismissed additional defendants[2] for plaintiff's failure to make service pursuant to Federal Rule of Civil Procedure 4(m) [D.E. 36]. On May 12, 2011, Magistrate Judge Webb entered a scheduling order [D.E. 37].

On July 5, 2011, all remaining defendants filed motions for summary judgment [D.E. 39, 41]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Melton about the motions for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 46]. On July 15, 2011, Melton responded in opposition only to defendant Bell's motion for summary judgment. Pl.'s Resp. Opp'n Bell Mot. Summ. J. [D.E. 47]. As explained below, the court grants the motions for summary judgment.

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita

---

[2] Thus, Melton's claim of discrimination against "officers Marsh, McMillan, and Wilkins," Am. Compl. at 8, is dismissed.

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position" is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

In the light most favorable to plaintiff, the facts relevant to the motions for summary judgment are as follows. Melton suffers from "a deformity to the right lower extremity [per]taining to bone and joint." Am. Compl. at 5. On September 9, 2008, defendant Jones examined Melton in response to his complaints of pain and tension in his right foot and genitalia and referred Melton to defendant Bell, a physician at LCI. Adcock Aff.[3] [D.E. 42-2] ¶ 6. On September 10, 2008, Bell examined Melton, but did not restrict Melton from any "activities and duties while awaiting a medical device such as orthopedic footwear." Am. Compl. at 6.[4] "By this action . . . Bell caused [Melton] a great deal of pain, suffering and damages such as blisters, swelling, blood discoloration in the foot and toes and ankle and possible lower back damages due to [Melton's] inability to climb, squat, bend and stand." Id. On September 30, 2008, defendant Jones saw Melton for "pain and

---

[3] Tammie Adcock is the Central Office Director of Nursing of the Division of Prisons for the North Carolina Department of Correction, and reviewed plaintiff's medical records. Adcock Aff. ¶¶ 3, 5.

[4] It appears Melton ultimately was put on medical restrictions, which included "[n]o climbing x 1 year; bottom bunk x 1 year," on March 5, 2009. See Pl.'s Resp. Opp'n Bell Mot. Summ. J., Ex. D (7/14/09 memorandum from Tabor Correctional Institution superintendent to Melton).

3

tension caused by right lower extremity deformity" and again referred him to defendant Bell, but Melton "was never seen . . . which caused [him a] great deal of unnecessary pain and suffering and further injury." Id.; see also Adcock Aff., Ex. A. However, although Bell did not examine Melton, he ordered labwork and prescribed an analgesic for pain. Adcock Aff. ¶ 8 & Ex. A. LCI nurses saw Melton on at least nine occasions between August 26, 2008 and December 2, 2008. See Am. Compl. at 21 (DOC grievance response); Adcock Aff. ¶ 6–9. Melton acknowledges that he received medical treatment during this time period but contends that "[it] wasn't working" and that he was not put on any restrictions "while awaiting [his] orthopedic shoes . . . ." Am. Compl. at 18–20. Additionally, on November 3 and December 31, 2008, Melton "filed sick call[s] with nursing staff at L.C.I. [but] was never seen . . . causing much pain and suffering." Id. at 6–7.

On October 20, 2009, Bell examined Melton and ordered x-rays of Melton's right knee, right foot, and lumbar sacral spine, which were all within normal limits. See id. at 19, 21. On November 12, 2008, Bell examined Melton again and prescribed antibiotics, but "didn't give [Melton] anything for pain and tension." Id. at 20. On December 8, 2008, Bell requested a urology consultation, which was approved on January 9, 2009, and on February 12, 2009, Melton was examined by a urologist, who found "normal physiology" with "no indications for medical intervention." Adcock Aff. ¶ 10 (quotations omitted).

On October 17 and 29, 2008, Melton "advised" defendants Hunt and Thomas "of problems within facility due to medical and discrimination [but] never got any response nor did problems stop from occuring [sic]." Am. Compl. at 9. Melton contends that "these officials had the power and authority to prevent any further actions from occuring [sic] and to amend any actions that had taken place," and that their inaction "caused [plaintiff a] great deal of physical and mental pain . . . in violation of [plaintiff's] Eighth Amendment Right." Id.

4

At 12:45 a.m. on January 1, 2009,[5] defendant McNeill placed Melton in a cell in disciplinary segregation, where Melton remained for fourteen days. See Am. Compl. at 8; McNeill Aff. [D.E. 44-1] ¶ 4. Melton further states that McNeill denied Melton his orthopedic footwear. Am. Compl. at 7. Melton alleges that he was denied all "personal hygiene or sanitation," id. at 8, although Melton did have a sink in his cell, and LCI records indicate that Melton was taken out of his cell for showers on at least six occasions. McNeill Aff. ¶¶ 7, 9. Melton also never requested any personal hygiene items from McNeill during his time in segregation, although he was allowed to request soap, a towel, tissue, and a change of clothes. Id. ¶ 9.

"To state a claim under [section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Additionally, a section 1983 plaintiff must allege the personal involvement of a defendant. See, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948–49 (2009); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691–92 (1978); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985).

As for defendant Bell, the court concludes that Bell is entitled to summary judgment for the same reasons stated in its May 6, 2011 order. To state a claim for inadequate medical care under section 1983, an incarcerated prisoner must allege deliberate indifference to his serious medical needs in violation of his Eighth Amendment rights. See, e.g., Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979); Estelle v. Gamble, 429 U.S. 97, 104 (1976). In order to prove such a claim, Melton "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious

---

[5] In his complaint, Melton states that he was transferred to disciplinary segregation on December 31, 2009. Am. Compl. at 8. This slight difference in time does not preclude summary judgment.

medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle, 429 U.S. at 104). A prisoner is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06. Melton alleges that Bell failed to put him on activity restrictions and that the treatment Bell provided did not improve Melton's condition. However, the record demonstrates that Melton received continuous medical attention, received orthopedic footwear, and ultimately was put on activity restrictions. Thus, Bell is entitled to summary judgment on Melton's claim for deliberate indifference. See, e.g., Meadows v. Ingram, No. 93-7308, 1994 WL 320217, at *3 (4th Cir. July 6, 1994) (per curiam) (unpublished table decision); Russell, 528 F.2d at 319; Starling v. United States, 664 F. Supp. 2d 558, 569–70 (D.S.C. 2009).

Defendant Jones is also entitled to summary judgment. Jones examined Melton on four occasions, each time in response to Melton's request for medical attention, and referred Melton to Bell for further treatment. Indeed, Melton acknowledges that he received treatment but "[it] wasn't working . . . ." Am. Compl. at 18–20. That the treatment provided to Melton did not succeed to his satisfaction does not reflect a constitutional violation in the quality of his medical care. Thus, Melton has failed to state a claim for deliberate indifference against Jones. See, e.g., Russell, 528 F.2d at 319; Starling, 664 F. Supp. 2d at 569–70.

As for defendant McNeill, to show that McNeill's conduct while Melton was placed in disciplinary segregation amounted to cruel and unusual punishment in violation of the Eighth Amendment, Melton "must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). The first prong requires the court to determine

6

whether the deprivation was objectively sufficiently serious, while the second prong requires the court to determine whether the officials acted with a subjectively sufficiently culpable state of mind. Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "[D]eliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard [an] objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Accordingly,

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.

Melton has not alleged that he suffered any serious or significant physical injury as a result of being denied any hygiene items, see Strickler, 989 F.2d at 1380–81, and fails to allege that McNeill acted with sufficient culpability. See, e.g., Hudson v. McMillian, 503 U.S. 1, 8–9 (1992); Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997); Strickler, 989 F.2d at 1379–81. Significantly, McNeill has produced uncontroverted evidence that Melton was allowed to take regular showers and that Melton never asked McNeill for any hygiene items. Accordingly, McNeill is entitled to summary judgment.

As for defendants Thomas and Hunt, Melton attempts to proceed against them on the basis of their "authority to prevent any further actions from occuring [sic] and to amend any actions that had taken place . . . ." Am. Compl. at 9. However, the doctrine of respondeat superior generally does not apply to a section 1983 action. See, e.g., Iqbal, 129 S. Ct. at 1948–49; Monell, 436 U.S. at 694;

7

Carter v. Morris, 164 F.3d 215, 220–21 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). Accordingly, Thomas and Hunt are entitled to summary judgment.

II.

For the reasons stated, the court GRANTS defendants' motions for summary judgment [D.E. 39, 41]. The Clerk of Court shall close the case.

SO ORDERED. This 18 day of January 2012.

JAMES C. DEVER III
Chief United States District Judge